IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| THOMAS EDWARD OWENS, JR., ) | CIVIL ACTION NO. 9:11-0100-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.     ) | **ORDER** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)[1], alleging disability as of December 1, 2006 due to degenerative disc disease and back pain. (R.pp. 113-127).

Plaintiff's claims were denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on May 6, 2010. (R.pp. 23-45). The ALJ thereafter denied Plaintiff's claims in a decision issued May 28, 2010.

---



[1]For purposes of DIB eligibility, a claimant must show that he or she became disabled prior to the expiration of his or her insured status. See 42 U.S.C. § 423(c); 20 C.F.R. § 404.101 (2009). Under SSI, the claimant's entitlement to benefits (assuming they establish disability) begins the month following the date of filing the application forward. Pariseau v. Astrue, No. 07-268, 2008 WL 2414851, * 13 (D.R.I. June 13, 2008); see 20 C.F.R. § § 416.202(g), 416.203(b), 416.335 (2009). Therefore, while the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue, No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish that [ ] he was disabled during the insured period for DIB may still receive SSI benefits if [] he can establish that [] he is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005). See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir. 1999)[Discussing the difference between DIB and SSI benefits].

(R.pp. 9-17). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-5).

Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further proceedings or for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court



2

disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

**Discussion**

A review of the record shows that Plaintiff, who was thirty-nine (39) years old when he alleges he became disabled,[2] completed school through the tenth grade and has past relevant work as a farmer. (R.pp. 15, 30). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairment[3] of lumbar degenerative disc disease, rendering him unable to perform his past relevant work, he nevertheless retained the residual functional capacity (RFC) to perform sedentary work[4] with restrictions, and was therefore not entitled to disability benefits. (R.pp. 11-12, 15).

Plaintiff asserts that in reaching this decision, the ALJ erred by failing to properly

---

[2]Plaintiff was thirty-nine years old on his initial alleged disability onset date of December 1, 2006. However, at the hearing Plaintiff amended his alleged disability onset date to December 13, 2007. (R.p. 26).

[3]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[4]Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2005).



evaluate his severe lower back problems, by failing to find that Plaintiff met the requirements of a Listing in the Listings of Impairments[5], and by failing to properly evaluate and consider Plaintiff's subjective testimony as to the extent of his pain and limitations. However, after careful review and consideration of the evidence and arguments presented, the Court finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision must therefore be affirmed.

## I.

### (Medical Record)

The record reflects that Plaintiff underwent an MRI of the lumbar spine in December 2006, which revealed a low-lying conus and degenerative disc change with a central and left paracentral disc protrusion at L4-L5. (R.p. 260). Plaintiff was diagnosed with spondylolysis bilaterally at L4 and L5. (R.p. 273). Dr. Christopher Paramore thereafter performed a laminectomy of L5 and S1 with a posterior interbody fusion of L4-5 and posterolateral fusion of L5-S1 on January 8, 2007, following which Plaintiff was discharged on January 12, 2007, with instructions to return for followup in one week. (R.p. 268). See also (R.pp. 269-272).

By April 17, 2007, Plaintiff reported only intermittent low back pain which, at worst, reached a three on a ten point scale. Plaintiff also reported that this pain would "occasionally" wake him up at night because he was unable to find a comfortable position, that he was only able to walk about ten minutes before having to sit down due to lower back pain, that he was unable to stand for

---

[5]In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medial signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). A claimant is presumed to be disabled if their impairment meets the criteria of an impairment set forth in the Listings. See 20 C.F.R. §§ 416.925, 416.926 (2003).



greater than ten minutes, and was only able to sit approximately ten minutes before having to move around. On examination, however, Plaintiff had normal strength in this lower extremities (5/5), with the exception of 4/5 in his hip flex and 3/5 in his knee flex. (R.p. 323). See Gaskin v. Commissioner of Social Security, 280 Fed.Appx. 472, 477 (6th Cir. 2008)[Finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment]. The following month Plaintiff reported that his lower back seemed to be improving, and that he had no leg pain. Plaintiff further reported that he was able to ambulate fifteen minutes on a treadmill and believed that physical therapy was helping his condition. On examination Plaintiff's range of motion was reduced, but his leg strength was 5/5 throughout except for the left hip flexion / "ABD" and knee flexion, which were 4/5. (R.p. 325).

On July 13, 2007, Plaintiff reported that he was "doing much better than he was before surgery", and complained of only "intermittent" pain of the level two on a ten point scale in his left buttocks and left thigh. Plaintiff further reported that he experienced this pain "only after he does a lot of activity". Range of motion was improved, and Plaintiff was able to walk more than twenty minutes on a treadmill without stopping. (R.p. 326). Plaintiff thereafter attended physical therapy regularly. See (R.pp. 327-330). Plaintiff returned to see Dr. Paramore on July 16, 2007, which was about six months post surgery. Plaintiff complained of moderate lower back pain, but Dr. Paramore noted that he was continuing to work. X-rays showed that Plaintiff's screws were in an excellent position and the L4-5 fusion looked solid, but there did appear to be a mature posteriolateral fusion. Dr. Paramore indicated that if Plaintiff continued to have a lower back ache, anterior interbody fusion might be considered. (R.p. 333).

On October 18, 2007 Plaintiff returned to see Dr. Paramore, complaining that when

5



he became more active he experienced lower back pain. This office note contains a notation that subsequent plain films had demonstrated probable non-union at L5-S1, and Dr. Paramore recommended a "minimally invasive Trans-I presacral approach to L5-S1 fusion." However, Plaintiff indicated he wanted to obtain a second opinion from Dr. Donald Johnson before deciding how to proceed. (R.pp. 331-332). Plaintiff then went see Dr. Johnson at the Southeastern Spine Institute on December 9, 2007, complaining of continuing back pain but expressing concern about further surgery. Dr. Johnson reviewed Plaintiff's medical records, and on examination found Plaintiff to be "diffusely tender throughout". Plaintiff exhibited a limited range of motion and a "provocative" straight leg raise, with radicular symptoms down to his left foot. Plaintiff also exhibited pain with flexion extension and lateral bending and generalized weakness, but no focal weakness throughout. Dr. Johnson recommended that Plaintiff have some imaging studies performed, after which he would call Plaintiff to review the results of these studies with him. (R.pp. 363-364). A CT myelogram was thereafter performed on January 10, 2008 which revealed an instrumented fusion from L-4 through S-1 with no stenosis or disc herniation at other levels. With respect to having his lateral fusion at the L5-S1 level redone, as had been suggested by Dr. Paramore, Dr. Johnson recommended that Plaintiff first consider undergoing pain management, as he did not feel that, given Plaintiff's symptoms, another L5-S1 fusion would likely help him. (R.p. 362).

On February 14, 2008, Plaintiff's medical records were reviewed by State Agency Physician Dr. Jean Smolka, who completed a Physical Residual Functional Capacity Assessment concluding that Plaintiff could perform light work[6] with a limited ability to push and/or pull in his

---

[6]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying
(continued...)



lower extremities; never climb ladders/ropes/scaffolds, occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; with no other limitations. (R.pp. 365-372). Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].

On February 21, 2008 Plaintiff was seen by Dr. Mark Netherton, also with the Southeastern Spine Institute, on referral from Dr. Johnson for an evaluation. Plaintiff reported that his pain was eight out of ten on a ten point scale at its worst and was three out of ten at its best, affecting his sleep, physical activities, and concentration. Plaintiff complained of aches and pains in the hips and across his back "all the time", as well as joint stiffness in the hips and knees and extremity weakness in his bilateral lower extremities. However, it was noted that Plaintiff had been observed ambulating into the clinic without significant difficulty, although he did have an antalgic gait. Further, on examination Plaintiff was found to have good grip strength and normal range of motion and normal strength in the upper extremities, as well as normal strength in the lower extremities, 5/5 (full) strength in the dorsi and plantar flexion in the feet, 5/5 with flexion/extension at the knees, and normal sensation and sympathetic function in the lower extremities. Plaintiff did have positive straight leg lifts bilaterally at greater than 45 degrees with radiation of pain into the L5-S1 distribution from the buttocks to the feet. Dr. Netherton stated that he would arrange for a "trial of stimulation' in the near future and would see Plaintiff back at that time. (R.pp. 373-374). Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians

---

[6](...continued)
of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



may constitute substantial evidence in support of a finding of non-disability].

On March 3, 2008, a second State Agency Physician Dr. Charles Hancock, reviewed Plaintiff's medical records and agreed with the previous findings of Dr. Smolka. (R.pp. 375-376). The record reflects that Plaintiff had a spinal simulator implanted for one week in April 2008, following which Plaintiff stated that he had received fifty percent pain relief. (R.pp. 34, 379).

Dr. Thomas Crosby, who is apparently Plaintiff's family physician, noted that he had seen Plaintiff on January 19, 2010, and that Plaintiff was continuing to suffer from back pain: "No better. No worse." (R.p. 444). On May 4, 2010 Dr. Crosby completed a Medical Statement in which he opined that Plaintiff met the requirements of Listing 1.04A[7] and Listing 14.09B of the Listings of Impairments. The Commissioner correctly notes that Dr. Crosby did not explain his reasoning or cite to any supporting evidence in filling out this form. Further, Dr. Crosby then also opined that he believed that Plaintiff was able to return to work doing sedentary work. (R.pp. 447-449). See Smallwood v. Chater, 65 F.3d 87, 89 (8th Cir. 1995)[Internally inconsistent findings not entitled to deference accorded to well supported treating physician determinations].

## II.

### (RFC Finding)

The ALJ reviewed this medical evidence as well as Plaintiff's subjective testimony as to the extent of his pain and limitations and determined that, although Plaintiff's lumbar degenerative disc disease was a severe impairment, Plaintiff retained the RFC to perform sedentary work with the ability to sit for six hours in an eight hour day in a job with a sit/stand option;

---

[7]The form actually says 1.02, which both parties agree is typographical error.



occasionally balance, stoop, kneel, crouch and crawl; occasionally use the left lower extremity to operate foot controls and occasionally climb ramps and stairs; but never climb ladders, ropes or scaffolds. (R.p. 12). The record contains substantial evidence to support he ALJ's findings and conclusions. See generally, (R.pp. 326, 333, 363-376); Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]; Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Blalock, 483 F.2d at 775 [it is the claimant who bears the burden of proving his disability].

        In reaching her decision, the ALJ noted the medical records from Plaintiff's treating surgeon showing that by Plaintiff's followup visit of January 22, 2007 his lower back pain was "largely gone" with good strength and no complaint of numbness or weakness in the legs; (R.pp. 13, 354); that in April 2007 Plaintiff reported his back pain as being only intermittent with a maximum of only three on a ten point pain scale, and the following month Plaintiff reported that physical therapy had helped "a lot" to improve his back pain; (R.pp. 13-14, 323, 325); and that in July 2007 Plaintiff reported that he experienced intermittent pain only after significant physical activity, classified as only two on a ten point pain scale, as well as to the records of Dr. Johnson and Dr. Netherton recommending only pain management and noting that Plaintiff was able to ambulate without difficulty and exhibited normal strength. (R.pp. 15, 326, 362, 373-374). See Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996)[noting importance of treating physician opinion]; Richardson, 402 U.S. at 408 [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; see also Cruse v. Bowen, 867 F.2d 1183, 1186 (8`h Cir. 1989) ["The mere fact that working may cause pain or discomfort does not mandate a finding of



disability]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that the objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations]. Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) [conservative treatment not consistent with allegations of disability]; Plaintiff was also generally noted to have normal sensation, muscle strength and tone, and a normal attention span and abilities of concentration. (R.pp. 323, 326-330, 333, 352, 354, 373-374). See Gaskin, 280 Fed.Appx. at 477 [Finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment]; Haynes v. Astrue, No. 09-484, 2010 WL 3377715 at * 3 (M.D.Ala. Aug. 25, 2010)["Muscle atrophy is an objective medical indication of pain and lack thereof in [Plaintiff] militates against the conclusion that she suffers from pain which precludes her from substantial gainful activity."]; Jenkins v. Bowen, 861 F.2d 1083, 1086 (8th Cir. 1988)[ALJ may consider evidence that a claimant has exaggerated his symptoms].

In sum, After a review of the decision and the record in this case, the Court does not find that the ALJ conducted an improper analysis of the evidence, or that her decision otherwise reflects a failure to comply with the requirements of SSR 96-8(p) or to properly consider the effect Plaintiff's impairment had on his ability to work. Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; cf. Roberts v. Masanari, 150 F.Supp.2d 1004, 1010 (W.D.Mo. 2001); Buchholtz v. Barnhart, 98 Fed.Appx. 540, 547 (7th Cir. 2004); Delgado v. Commissioner of Social Serv., 30 Fed.Appx. 542, 547-548 (6th Cir. 2002). Plaintiff's argument that the ALJ should have gone into even greater detail with respect to her



findings is without merit. Dryer, 395 F.3d at 1211 [ALJ not required to specifically refer to every piece of evidence in the decision]; Rogers v. Barnhart, 204 F.Supp.2d 885, 889 (W.D.N.C. 2002). See also Osgar v. Barnhart, No. 02-2552, 2004 WL 3751471 at *5 (D.S.C. Mar. 29, 2004), aff'd, 117 Fed.Appx. 896 (4th Cir. Jan. 5, 2005).

### III.

### (Listing Claim)

Plaintiff also complains that the ALJ should have found that he met the requirements of Listing 1.04A and/or 14.09B. However, the ALJ specifically addressed whether Plaintiff met the requirements of either of these two Listings, finding that he did not. (R.p. 12).

With respect to Listing 1.04A, this Listing requires compromise of a nerve root (including the cauda equina) or the spinal cord, with evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy or associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising testings (sitting or supine). See 20 C.F.R. pt. 404 subpt. P, App. 1, § 1.04. In rejecting Plaintiff's claim that he met this Listing, the ALJ noted that Plaintiff's MRI examinations failed to reveal any significant herniation, stenosis, or nerve root impingement; (R.p. 12); a finding supported by substantial evidence in the record. (R.pp. 333, 374). Further, the fact that the medical records show that Plaintiff is able to ambulate effectively provides additional support for the ALJ's finding. See Reid v. Commissioner of Social Security, No. 07-15275, 2009 WL 877691 at * 8 n. 4 (E.D. Mich. Mar. 30, 2009)[While "[a]n inability to 'ambulate effectively' is part of Listing 1.04C, [it] is also applicable to an examination of 1.04A given that both a loss of strength and feeling can inhibit walking . . . ."]; see also Sullivan



v. Zebley, 493 U.S. 521, 530 (1990)["For a claimant to show that his impairment matches a Listing, he must show that it meets *all* of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."].

With respect to Listing 14.09B, which requires a finding of inflamation or deformity in one or more major peripheral joints involving two or more organs/body systems (one of which at least moderate level of severity) as well as at least two of the following: severe fatigue, fever, malaise, or involuntary weight loss; the ALJ found that the record failed to establish that Plaintiff suffers from the necessary joint inflamation or deformity in two or more major joints resulting in an inability to ambulate effectively or an inability to perform fine and gross movements effectively. (R.p. 12). Again, this finding is supported by substantial evidence in the case record. Gonzales v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) [Commissioner is not required to state why a claimant failed to satisfy every element of the Listings]. The undersigned also notes the lack of any objective evidence in Plaintiff's medical records indicating severe fatigue, fever, malaise, or involuntary weight loss. Sullivan, 493 U.S. at 530 [Plaintiff has the burden of showing that her impairment matches a Listing].

This claim is therefore without merit.

### IV.

### (Dr. Crosby's Opinion)

Admittedly, Dr. Crosby opined that Plaintiff's back impairment met the requirements of Listing 1.04A and 14.09B. However, the ALJ noted that the objective evidence of record did not support Dr. Crosby's opinion, specifically citing to the results of Plaintiff's MRIs, and further noting that since Dr. Crosby also opined in the same opinion that Plaintiff was capable of performing



sedentary work, his conclusions were inherently inconsistent and contradictory. (R.pp. 14-15). See Smallwood, 65 F.3d at 89 [Internally inconsistent findings not entitled to deference accorded to well supported treating physician determinations]. In any event, there is no indication on the form completed by Dr. Crosby as to how he reached his conclusion or on what evidence he relied. Craig, 76 F.3d at 590 [ALJ did not err in giving little weight to a conclusory medical opinion].

After review of the record and evidence in this case, the Court can find no reversible error in the ALJ's treatment of Dr. Crosby's opinion that Plaintiff's impairment met the requirements of a Listing. Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)["When a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted)]; Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)[court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; see also Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir. 1991)[ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record].

V.

**(Subjective Evidence)**

Finally, Plaintiff's argument that the decision should be reversed because the ALJ conducted a flawed credibility analysis of his subjective testimony is also without merit. In addition to reviewing the objective medical evidence, the ALJ noted Plaintiff's testimony as to the significance of his impairment, but that Plaintiff also admitted that he had not attempted to perform less strenuous work than his previous heavy exertional job as a farmer, that he engaged in activities such as fishing and attending baseball games and church, that Plaintiff was taking only over the counter medications for his pain, that his medical records reflect generally normal strength in his



extremities, that Plaintiff's own previous comments indicated that his pain increased with physical activity, as well as the inconsistencies with which Plaintiff described his pain on a pain scale. (R.pp. 13-14, 31, 36-37, 39, 323, 325-326, 365-372, 373-374, 444).  Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; cf. Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005)[Accepting ALJ's finding that claimant's activities were inconsistent with complaints of incapacitating pain where she engaged in a variety of activities].

While, after a review of this record and the evidence, the ALJ did find that Plaintiff's pain and limitations restricted him to sedentary work rather than the light work opined to by the State Agency Physicians, giving the "benefit of the doubt" to Dr. Crosby's opinion that Plaintiff was limited to sedentary work, she did not otherwise find Plaintiff's testimony to be credible to the extent it succeeded the residual functional capacity found by the ALJ. (R.pp. 13-15). Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987)[ALJ is entitled to observe the Plaintiff, evaluate her demeanor, and consider how the Plaintiff's testimony fits with the rest of the evidence]; Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993)[ALJ may properly consider inconsistencies between a Plaintiff's testimony and the other evidence of record in evaluating the credibility of Plaintiff's complaints]; Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990)[False or exaggerated responses are entitled to weight in determining whether an impairment exists]; Jolley, 537 F.2d at 1181 [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Casey v. Secretary of Health & Human Servs., 987 F.2d 1230, 1234 (6th Cir. 1993)["Since the ALJ has the opportunity to observe the



9:11-cv-00100-BM     Date Filed 11/21/11     Entry Number 15     Page 15 of 15

demeanor of the witness, his conclusions with regard to credibility should not be discarded lightly and should be accorded deference."]. The court can discern no reversible error in the ALJ's treatment of Plaintiff's testimony and the objective evidence. Marquez v. Astrue, No. 08-206, 2009 WL 3063106, at * 4 (C.D.Cal. Sept. 21, 2009)[No error where ALJ's RFC finding was even more restrictive than the exertional levels suggested by the State Agency examiner].

### Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is **Ordered** that the decision of the Commissioner is **affirmed**.

**IT IS SO ORDERED**.

November 21, 2011                                   Bristow Marchant
Charleston, South Carolina                     United States Magistrate Judge

**The parties are hereby notified that any right to appeal this Order is governed by Rules 3 and 4 of the Federal Rules of Appellate Procedure**

15

